IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOMIKA HOLMES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 1:22-cv-01478-JEB |
| | : |
| | : |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | : |
| | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to *Fed. R. Civ. P. 56* and the entire record of the case, the Defendant Washington Metropolitan Area Transit Authority (WMATA) hereby moves this Court for summary judgment. In support of this motion, the Defendant submits the attached Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute, Exhibits, and proposed Order.

WMATA is entitled to summary judgment in its favor on Count I (Race Discrimination), Count II (Gender Discrimination), and Count III (Color Discrimination) of Plaintiff's Complaint because all three claims are outside the scope of her charge of discrimination and the alleged adverse employment actions citied in her charge of discrimination occurred more than 180 days after the filing of said charge. Even if such claims are actionable, summary judgment is still appropriate because Plaintiff cannot show that WMATA's legitimate, nondiscriminatory reason for her demotion was because of Plaintiff's race, gender, or color.

WMATA is also entitled to summary judgment in its favor on Count IV (Retaliation) of

Plaintiff's Complaint because she cannot show causation between her allegations of retaliation and any statutory protected activity.

Finally, WMATA is entitled to summary judgment in its favor on Count V (Hostile Work Environment) of Plaintiff's Complaint because she cannot show a pattern of discriminatory conduct sufficiently severe or pervasive enough that it altered the conditions of her employment nor can she even show that such conduct, if proven, was because of her gender, race, color, or statutory protected activity under Title VII.

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY


*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA- Legal Dept.
300 7th Street, SW
Washington, D.C. 20024
(202) 962-1468

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOMIKA HOLMES, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Case No. 1:22-cv-01478-JEB |
| | : |
| | : |
| WASHINGTON METROPOLITAN | : |
| AREA TRANSIT AUTHORITY, | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

**I. Statement of Facts**

Plaintiff Tomika Holmes is a police lieutenant in WMATA's Metro Transit Police Department (MTPD) who alleges that she was subject to race, gender, or color discrimination; a hostile work environment; or, retaliation. Plaintiff alleges that investigations and any resulting discipline issued to Plaintiff throughout her career, including her demotion to sergeant in January 2021, was because of her race, gender, or color; or retaliation for engaging in protected activity; or evidence of a hostile work environment. Plaintiff also alleges that her reduction in pay due to her demotion, a later paycheck correction, or the refusal of the MTPD to investigate a white officer that made an accusation against Plaintiff later determined to be unfounded, were all examples of either race, gender, or color discrimination, retaliation, or a hostile work environment.

Plaintiff was hired as a MTPD officer on September 24, 2001. On December 5, 2016, Plaintiff was issued a letter of reprimand for violating MTPD General Order 215 for operating her

private vehicle while on duty, without approval of an official. ECF No. 12-3. On August 8, 2017, Plaintiff was issued a letter of reprimand for misrepresenting her time and attendance after an internal audit of MTPD's timekeeping. ECF No. 12-4. On September 27, 2017, Plaintiff received a five day suspension, without pay, for failing to provide an MTPD Command Notification regarding the kidnapping of a WMATA bus operator. ECF No. 12-5. On April 6, 2018, Plaintiff received a written warning for failing to properly staff her command shift on Easter Monday 2018. ECF No. 12-6.

On July 26, 2018, Plaintiff filed her first internal complaint of discrimination with WMATA's Office of Fair Practices (FAIR) alleging that her prior discipline was racially discriminatory. ECF No. 12-7. On November 1, 2018, Plaintiff received a letter of reprimand for her violation of MTPD General Order 231 because she failed to contact a citizen who complained about a traffic stop and failed to initiate a preliminary investigation into that traffic stop. ECF No. 12-8. On January 4, 2019, Plaintiff received a letter of reprimand for violating MTPD General Order 255 because she granted personal leave to six MTPD officers under her supervisory command – despite her commanding officer having set a maximum allowance of two officers. ECF No. 12-9.

On January 10, 2019, FAIR issued the results of its internal investigation into Plaintiff's first internal complaint mentioned above. ECF No. 12-7. FAIR did not find that Plaintiff's prior discipline was due to racial discrimination. *Id*. FAIR determined that MTPD had legitimate, nondiscriminatory reasons for each disciplinary action complained of by Plaintiff. *Id*.

Despite Plaintiff's record being free of any investigations or discipline for over a year, Plaintiff filed a second internal complaint of discrimination with FAIR on August 28, 2020, alleging that she was subject to retaliation due to her earlier internal complaint in 2018 of

2

discrimination. ECF No. 12-10.

On December 30, 2020, Plaintiff was issued a written dereliction in violation of General Order 215 when she was cited for ordering two junior officers to sign a Talent Release form without telling them signing the form was optional. ECF No. 12-11. On January 21, 2021, Plaintiff was demoted to sergeant, in lieu of termination, for four violations of MTPD General Order 216. ECF No. 12-12. On January 29, 2021, Plaintiff was accused of a receipt of evidence violation. ECF No.12-13. An investigation was initiated, and it was later determined on February 19, 2021, that Plaintiff did not commit a receipt of evidence violation and she received no discipline as a result. *Id.* The investigation first received a "Exonerated" classification finding but was changed seven days later to a "Unfounded" classification finding. ECF No. 12-14. Regardless of the positive outcome of the investigation, Plaintiff alleged that the failure of MTPD to investigate the white officer who made the accusation was evidence of retaliation, a hostile work environment, racial or gender discrimination, or discrimination based on color.

On July 17, 2021, Plaintiff filed an external complaint of discrimination with the D.C. Office of Human Rights and the EEOC (Charge of Discrimination # 570-2021-01998) alleging that her demotion to sergeant in January 2021; the later reduction in pay because of the demotion; the investigation into the alleged receipt of evidence violation that resulted in no discipline; the failure to investigate the officer who accused Plaintiff of the evidence violation; and, the attempt to recover a overpayment of Plaintiff's paycheck in June 2021 was evidence of a hostile work environment or retaliation. ECF No. 12-5. In the "Discrimination Based On" section, Plaintiff did not check the box for race, color, or sex. *Id*. The only boxes checked were the boxes for retaliation and hostile work environment. *Id.* In the "Particulars" section of the charge, Plaintiff does not mention, in any detail, discrimination based on race, gender, or color at all. *Id*.

3

On May 5, 2022, Plaintiff filed the above-captioned Complaint. ECF No. 1. On March 27, 2023, Plaintiff earned a promotion back to her current rank of lieutenant and is reassigned to Patrol Operations. Holmes Dep. 7:6-22 & 8:1-6, ECF No. 12-2.

## II. Argument

A. **WMATA Is Entitled to Summary Judgment in its Favor on Count I (Race Discrimination), Count II (Gender Discrimination), and Count III (Discrimination Based on Color) Because Those Allegations Are Outside the Scope of Plaintiff's Charge of Discrimination**

Plaintiff's allegations of race, gender, or discrimination based on color should be dismissed because those allegations are outside the scope of Plaintiff's charge of discrimination. In the alternative, those allegations should be dismissed because the alleged adverse employment action cited in Plaintiff's Charge of Discrimination (her January 2021 demotion) and any subsequent employment actions also cited in her charge, occurred more than 180 days before the filing of said charge.

Before initiating her lawsuit, Plaintiff is required under Title VII to exhaust her administrative remedies "by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident." *Oviedo v. WMATA*, 948 F.3d 386, 393 (D.C. Cir. 2020) (quoting *Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir. 1998)). Title VII requires a complainant to file a charge with the EEOC first and allow the agency time to act on the charge before filing a lawsuit within ninety days after receipt of a notice of a right to sue letter. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). A Title VII lawsuit is limited in scope to claims that are "'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id*. at 907 (quoting *Cheek v. W. & S. Life Ins. Co*., 31 F.3d 497, 500 (7th Cir.

1994)). At a minimum, Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination. *Id*.

The administrative charge must set forth with specificity the theory behind the charge being made, which can be easily done considering that the EEOC's own charging document has boxes to check that specify the plaintiff's theory behind the discrimination charge. *Alfred v. Scribner Hall & Thompson, LLP*, 473 F. Supp. 2d 6, 8 (D.D.C. 2007). If a charge of discrimination filed with the EEOC does not include a particular theory of discrimination, it is barred in a subsequent civil action. *Id*.

In the "Discrimination Based On" section of Plaintiff's charge, only the hostile work environment and retaliation boxes are checked. The boxes for race, gender, and color are blank. In the "Particulars" section, Plaintiff gives a long narrative alleging that her demotion and the investigation that lead to it in January 2021, the investigation into her alleged failure to report evidence, which resulted in no discipline to her, the refusal of WMATA to investigate the officer who initiated the failure to report evidence investigation, and the issues with her pay, were examples of a hostile work environment. Plaintiff does not make any allegations that she was the subject of race, color, or gender discrimination in the Particulars section. As a result, Plaintiff's allegations of race, gender, and color discrimination later made in the Complaint are outside the scope and should be dismissed.

Assuming that Plaintiff's allegations of race, gender, or color discrimination can be considered despite the unchecked boxes on her charge, Plaintiff's allegations must still be dismissed because she failed to file her charge of discrimination within 180 days of the alleged adverse employment actions cited in the charge — the January 21, 2021, demotion, and events afterward. The charge of discrimination was filed on July 17, 2021, so for the demotion and any of the other events

alleged in Plaintiff's charge to be actionable under a race/gender/color discrimination theory, her charge should have been filed by June 21, 2021.

There is no evidence that race, sex, or color discrimination were the reasons for her demotion, the investigation into whether she failed to receive evidence, nor the issues with her paycheck. Plaintiff presents no evidence that could show that race, gender, or her color had anything to do with her demotion or pay issues. Plaintiff's transgressions were well investigated and any discipline resulting from those investigations is well documented. *See* ECF Nos. 12-12 and 12-13. In fact, Plaintiff's allegations about the investigation into the failure to receive evidence or MTPD's refusal to investigate the officer who initiated that investigation, are not adverse actions at all.

> **B.     WMATA Is Entitled to Summary Judgment in Its Favor on Count IV (Retaliation)**

Plaintiff cannot show a causal link between her demotion (or any other employment action alleged in her charge of discrimination after her demotion) and the filing of her last internal complaint of discrimination, the only possible actionable protected activity.

To prove a prima facie case of retaliation under Title VII, a plaintiff must show (1) that she engaged in statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) that a causal link connects the two. *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).

"Protected activity under Title VII includes having 'made a charge, testified, asserted, or participated in any manner in an investigation, proceeding, or hearing' on the basis of discrimination" under Title VII. *See, e.g.*, *Arias v. Marriott Int'l.*, 217 F. Supp. 3d 189, 195-96 (D.D.C. 2016) (quoting *Jones v. Billington*, 12 F. Supp. 2d 1, 13 (D.D.C. 1997)); *see also Sledge*

at 19. For purposes of a retaliation claim, an employer's action could be considered materially adverse if such an action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington M. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Sledge, supra*, at 19. But employment actions that do not result in tangible job consequences are not considered materially adverse to support a retaliation claim. *See, e.g.*, *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009).

A plaintiff asserting that a particular materially adverse employment action is grounds for retaliation must still prove a causal nexus between the protected activity and the accused employment action. *See, e.g.*, *Sledge, supra*, at 19. To demonstrate this, plaintiff must show evidence that the employer had actual knowledge of the protected activity and acted against the plaintiff because of it. *Id.* District courts in this circuit have generally found that a period of more than three months between alleged protected activity and a materially adverse employment action does not show retaliation when the employee has relied on evidence of temporal proximity alone. *Id*. (citing *Hamilton, supra*, at 1349).

  In this case, Plaintiff engaged in only three instances of what can be considered statutorily protected activity: (1) her July 28, 2018 internal complaint; (2) her August 28, 2020 internal complaint; and (3) her charge of discrimination with the EEOC on July 17, 2021. The record shows no evidence of Plaintiff experiencing any materially adverse employment after she filed her July 2021 charge of discrimination. In fact, Plaintiff was promoted back to lieutenant after she filed her charge.

  Second, there are no allegations in her charge of discrimination, nor her Complaint, that Plaintiff suffered a materially adverse employment action after the filing of her internal July 2018 complaint. Even if Plaintiff were to assert that she suffered a materially adverse employment

7

action after the filing of her July 2018 internal complaint, arguably the closest materially adverse employment action — Plaintiff's January 2021 demotion— occurred over three years later.

The last potential claim of protected activity Plaintiff could assert is the internal complaint on August 28, 2020, but as noted above, the only employment action one could consider to be materially adverse is the January 2021 demotion, which occurred five months after the filing of her August 28 internal complaint.[1] There is therefore no causal connection between her August 28 internal charge and any of the alleged employment actions that occurred afterward.

Therefore, Plaintiff cannot show retaliation and that count must be dismissed.

**C.     WMATA Is Entitled to Summary Judgment in its Favor on Counts IV (Hostile Work Environment) Because None of Plaintiff's Allegations Satisfy the Legal Requirement of a Hostile Work Environment Under Title VII**

Plaintiff's hostile work environment claim fails because her those allegations are merely a series of discrete acts that reflect the ordinary tribulations of the workplace.

To establish a hostile work environment claim, a plaintiff must show that (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was on the basis of membership in a protected class; (4) the harassment unreasonably interfered with the plaintiff's work performance and created an intimidating, hostile, or offensive working environment; and (5) the employer knew or should have known of the harassment and failed to prevent it. *See, e.g.*, *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 23 (D.D.C. 2014); and

---

[1] As mentioned earlier in the discussion concerning Plaintiff's allegations of race, gender, and color discrimination, Plaintiff has a failure to exhaust problem under a theory of retaliation as well. The demotion and all events cited in Plaintiff's charge of discrimination later occurred more than 180 days from the date Plaintiff filed her external EEOC charge, and so she also failed to exhaust her claims that her demotion, and any of the other events cited in her charge, were because of retaliation.

8

*Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. 2006) (a hostile work environment can amount to retaliation).

Ongoing acts of harassment only create a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sledge* at 24 (quoting *Harris v. Forklift Systs., Inc.*, 510 U.S. 17, 21 (1993)). "In determining whether a hostile work environment exists, courts look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris*, 510 U.S. at 23). This standard ensures that "Title VII does not become a general civility code" forcing courts to govern "the ordinary tribulations of the workplace." *Bonnet v. Skinseki*, 907 F. Supp. 2d 54, 80 (D.D.C. 2012). Whether a work environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (D.C. Cir. 2015) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Even when a plaintiff identifies workplace conduct rising to the level of actionable harassment, an actionable hostile environment claim follows only if plaintiff can show that the incidents of harassment are sufficiently related insofar that they involve the same type of employment actions, occur often, and are perpetrated by the same managers. *Id*. (citing *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)). The harassment must be "part of the same employment practice" and not a series of "unrelated discriminatory or retaliatory acts." *Gotbaum* at 1252.

In the D.C. Circuit, "hostile behavior, no matter how unjustified or egregious," will not rise to a viable claim of a hostile work environment without "some linkage between the hostile behavior and the plaintiff's membership in a protected class." *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009). Finally, and importantly, courts in the D.C. Circuit "'frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation'" and discrimination into a broader hostile work environment claim. *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007); *see also Hampton v. Vilsack*, 760 F. Supp. 2d 38, 56-57 (D.D.C. 2011).

In alleging conduct Plaintiff believes supports her hostile work environment claim, Plaintiff appears to take the "everything but the kitchen sink" approach. Plaintiff seeks to bootstrap conduct going as far back as 2016 to support her claim. Essentially, Plaintiff alleges that every investigation of her and the resulting discipline between 2016 and 2021 are examples of a hostile work environment. *See* Complaint ¶¶ 16, 23-34, ECF No. 1. Plaintiff has not specified in either her charge of discrimination nor her Complaint whether she is alleging a hostile work environment based on race, gender, color, or engagement in protected activity, which reinforces WMATA's belief that Plaintiff's allegations amount to little more than throwing pieces of spaghetti on the wall and seeing what sticks.

Plaintiff's hostile work environment claim fails because there is no evidence of conduct sufficiently severe and pervasive enough to constitute a hostile work environment. The complained of conduct allegations are merely discrete, spaced-out employment actions that were not only well-investigated and documented, but any discipline that resulted from each investigation is justified as a nondiscriminatory (and nonretaliatory) employment action. *See* ECF Nos. 12-3, 12-4, 12-5, 12-6, 12-8, 12-9, 12-11, 12-12, and 12-13. Plaintiff's displeasure with being investigated and receiving discipline (and in some places, no discipline at all) simply reflect

10

the normal "trials and tribulations" of the workplace.

Objectively, plaintiff fails to show that the work environment was objectively hostile considering that throughout her career, any investigation, and subsequent discipline was sporadic and light. This is because the Plaintiff's record shows only one suspension, one demotion, and several promotions, including a recent promotion back to lieutenant.

More importantly, there is no evidence that any of the alleged employment actions were taken because of Plaintiff's race, gender, color, or engagement in protected activity. Thus, WMATA is entitled to summary judgment as a matter of law on all counts.

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY


*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA- Legal Dept.
300 7th Street, SW
Washington, D.C. 20024
(202) 962-1468

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TOMIKA HOLMES** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Case No. 1:22-cv-01478-JEB |
| | : |
| | : |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | : |
| | : |
| **Defendant.** | : |
| | : |

## **ORDER**

UPON CONSIDERATION of Defendant WMATA's Motion for Summary Judgment, and the entire record of the case, it is this _____ day of _____, 2023; ORDERED, that the motion is GRANTED, and the case is dismissed with prejudice for the reasons stated in the Defendant's motion and supporting memoranda of points and authorities. This is a Final Order

_____
Judge James E. Boasberg

Copies to:

Michael K. Guss
Senior Counsel
300 7th Street, SW
Washington, D.C. 20024

Donna Williams Rucker
Deputy Managing Partner
Tully Rinckney, PLLC
2001 L Street NW, Suite 902
Washington, DC 20036