## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

TOMIKA HOLMES,                    )

                                )

        *Plaintiff*,            )          Civil Action No. 1:22-CV-01478-JEB

                                  )

              v.                 )

                                  )

WASHINGTON METROPOLITAN    )

AREA TRANSIT AUTHORITY       )

                                  )

        *Defendant*.          )          December 4, 2023

_____ )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 7(b), the Plaintiff, Tomika Holmes, by and through her undersigned counsel, hereby moves the Court to issue an Order denying the Defendant's Motion for Summary Judgment of Plaintiff's Complaint and allow this case to proceed to trial. The supportive bases of Plaintiff's opposition are set forth in the attached Memorandum.

WHEREFORE, the Plaintiff respectfully request that this Court deny the Defendant's Motion for Summary Judgment.

Respectfully submitted,

/s/ Donna Williams Rucker
Donna Williams Rucker
(D.C. Bar 446713)
Tully Rinckey, PLLC
2001 L Street NW, Suite 902
Washington, DC 20036
Tel: (202) 787-1900
Fax: (202) 640-2059
DRucker@fedattorney.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 4th day of December 2023, I served the above Plaintiff's Opposition to Defendant's Motion to Dismiss and Motion for Summary Judgment in the Alternative *via* CM/ECF on the following:


      Michael K. Guss
      Senior Counsel
      WMATA-COUN
      600 Fifth Street NW
      Washington, DC 20001


                             /s/ Donna Williams Rucker
                             Donna Williams Rucker

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| TOMIKA HOLMES, | ) | |
| | ) | |
| _Plaintiff_, | ) | Civil Action No. 1:22-CV-01478-JEB |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY | ) | |
| | ) | |
| _Defendant._ | ) | December 4, 2023 |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER OPPOSITION TO THE**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………………i

TABLE OF AUTHORITIES………………………………………………...…………………ii

I. SUMMARY OF FACTS……………………………………………………………….……1

II. PROCEDURAL HISTORY……………………………………………………………….…1

III. ARGUMENT……………………………………………………………………...……...2
   A. Legal Standard……………………………………………………………………….2
      1. Motions for Summary Judgment…………………………………………...……2
      2. Standard for Title VII Discrimination…………………………………………3
      3. Standard for Hostile Work Environment…………………………………...…5

   B. Plaintiff's Allegations Satisfy the Legal Requirement of a Hostile Work Environment Under Title VII….…………………………………………………….…….6

   C. Plaintiff's Allegations Satisfy the Legal Requirement of a Retaliation Claim Under Title VII…………………………………………………………………………….…..7
      1. Plaintiff engaged in protected activity……………………………….……..7
      2. Plaintiff was Subjected to Adverse Employment Action ……………………...………7
      3. There is a Causal Connection Between Plaintiff's Protected Activity and the Adverse EmploymentAction………………………………………………………...……...10
      4. The Defendant has Offered No Legitimate Non-Retaliatory Explanation for the Action………………………………………………...………………………………11

IV. CONCLUSION…………………………………………………………………………12

# TABLE OF AUTHORITIES

*Adickes v. Kress & Co*., 398 U.S. 144 (1970) …………………………………….……..……….2

*Adeyemi v. District of Columbia*, 525 F.3d 1222 (D.C. Cir 2008) ……………...……...……..4

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ………………………………….…........2

*Baird v. Gotbaum*, 888 F.Supp. 2d 63 (D.D.C. 2012) ………..…………………………….6

*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) …….…………………………..……..5

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008) …………..…..……..7

*Brooks v. Grundmann,* 748 F.3d 1273 (D.C. Cir. 2014) ……………………….………………5, 6

*Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006) …….…………………...8, 9, 10

*Chambers v. District of Columbia,* 35 F.4th 870 (D.C. Cir. 2022) …………………………...8

*Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268 (2001) …………………………..……………3

*Greer v. Bd. of Trs. of Univ. of D.C*., 113 F. Supp. 3d 297 (D.D.C. 2015) …………..…………10

*Harris v. Forklift Sys., Inc*., 510 U.S. 17 (1993) …………………………………………..……5

*Hussain v Principi*, 344 F. Supp. 2d 86 *aff'd sub nom. Hussain v. Nicholson*, 435 F.3d 359 (D.C. Cir. 2006) …………………..………………………………………………….……..5

*Holcomb v. Powell,* 433 F.3d 889 (D.C. Cir. 2006) …………….……………………..…..….…3, 4

*Marshall v. Potter*, 634 F. Supp. 2d 66 (D.D.C. 2009) ………………………………..………10

*Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) …………….…......2, 3

*McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) …………………………..…………3, 4

*Moore v. KUKA Welding Sys. & Robot Corp*., 171 F.3d 1073 (6th Cir. 1999)……………………7

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ………...……..…………5

*Nurriddin v. Bolden*, 818 F.3d 751 (D.C. Cir. 2016) …………………………………………...4, 5

*Peters v. District of Columbia*, 873 F. Supp. 2d 158 (D.D.C. 2012) …………………..……….5

*Roberts v. Segal Company*, 125 F.Supp.2d 545 (D.D.C. 2000)…………..……………………7

In support of the Plaintiff's Opposition to the Defendant's ("Washington Metropolitan Area Transit Authority," "WMATA," or "Defendant") Motion for Summary Judgment, the Plaintiff, Tomika Holmes ("Ms. Holmes" or "Plaintiff"), by and through her undersigned counsel, submits the following Memorandum.

## I.    SUMMARY OF FACTS

In 2001, Plaintiff began her position with WMATA as a Police Officer with the WMATA/Metro Transit Police Department ("MTPD"). ECF No. 1, ¶ 14. Plaintiff then rose through the ranks and eventually earned the title of Lieutenant while overseeing the Crime Scene Search, the Property and Evidence Unit, and the Field Training Unit. ECF No. 1, ¶ 15. During Plaintiff's entire tenure in Defendant's employ, Plaintiff repeatedly complained through her chain of command about continuous discriminatory, sexist, and racist practices by various supervisors within WMATA/MTPD, including her then supervisor Captain Stephen Boehm who had a practice of unfairly disciplining and harassing his subordinate African American employees. ECF No. 1, ¶ 16. Plaintiff was often treated differently by Captain Boehm from her co-workers who were of a different race and sex, and who have not engaged in prior EEO activity.  ECF No. 1, ¶ 17. From 2018 through 2021, Plaintiff was subject to disciplinary actions, involuntary shift transfers, demotions, investigations, withheld compensation, denied promotional opportunities, administrative leave, and hostile work environment harassment due to her race (African-American), sex (female), and protected activity. ECF No. 1, ¶¶ 18-34.

## II.    PROCEDURAL HISTORY

On or about August 28, 2020, Plaintiff timely submitted a Form 5 Charge to the Equal Employment Opportunity Commission ("EEOC") identified as EEOC Charge No. 570-2021-01998 alleging race discrimination and retaliation. ECF No. 1, ¶ 4. On or about February 3, 2022,

Plaintiff received an email with a *Pre-Determination Counseling Letter*. ECF No. 1, ¶ 7. On or about February 10, 2022, Plaintiff filed a Response Letter to address the concerns raised in the *Pre-Determination Letter*. ECF No. 1, ¶ 8. On or about February 24, 2022, Plaintiff received a notification that her EEO complaint had closed, which then provided Plaintiff with ninety (90) days in which to file a lawsuit. ECF No. 1, ¶ 9. Plaintiff filed a civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") against the Defendant, alleging in her Complaint that she was discriminated against on the basis of race, retaliation, and hostile work environment. ECF No. 1. In Counts I, II, and III of her Complaint, Plaintiff specifically alleged that because of her protected status, her supervisors routinely humiliated and ostracized her, and engaged in a persistent patter of severe and pervasive harassment. ECF No. 1 ¶¶ 35-84. In Counts IV and V of her Complaint, Plaintiff alleges that because of her participating in opposition to unlawful and discriminatory employment practices of Defendant, she was subjected to retaliation. ECF No. 1, ¶¶ 85-109. On October 20, 2023, the Defendant filed a Motion for Summary Judgment. ECF No. 14. This timely response follows.[1]

### III.    PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Civil Rule 7(h)(1), Plaintiff Tomika Holmes ("Ms. Holmes" or "Plaintiff", respectfully submits this response to the Defendant's Statement of Material Facts Not in Dispute. ECF No. 14-1. Plaintiff restates the Defendant's Statement of Material Facts as to Which There is No Genuine Issue below with citations as provided in the Defendant's Motion. Plaintiff's response follows each Defendant Statement of Material Fact.

---

[1] Pursuant to this Court's August 30, 2023, Minute Entry, Plaintiff was ordered to file a response to the Defendant's dispositive motion on or before December 4, 2023.

1. Plaintiff, who was hired on September 24, 2001, is currently a police lieutenant in WMATA's Metro Transit Police Department ("MTPD"). Holmes Dep. 7:6-22 – 8:1-6, July 6, 2023, ECF No. 12-2.

   **RESPONSE:** Admitted

2. On December 5, 2016, Plaintiff was issued a letter of reprimand for violating MTPD General Order 215 for operating her private vehicle while on duty, without approval of an official. ECF No. 12-3.

   **RESPONSE: Disputed. Plaintiff was required to perform work later that evening as a Watch Commander. Since Plaintiff had Watch Commander duties, she could not be in a duty status when she was engaged in training earlier that day.** *See* **Exhibit 5.**

3. On August 7, 2017, Plaintiff was issued a letter of reprimand for inappropriately earned compensatory time without approval in order to complete administrative tasks after an internal audit on timekeeping. ECF No. 12-4

   **RESPONSE: Disputed. Plaintiff did not submit any time entries for "compensatory" time. As such, at no time did Plaintiff's supervisor deny any submitted timecards.** *See* **Exhibit 5.**

4. On September 27, 2017, Plaintiff received a five (5) day suspension, without pay, for failing to provide a Command Notification regarding the kidnapping of a WMATA bus operator. ECF No. 12-5.

   **RESPONSE: Disputed. Plaintiff** *did* **in fact provide a Command Notification after having a conversation with the Deputy Chief of Patrol Operation, Kevin Gaddis.** *See* **Exhibit 5;** *see* **Plaintiff's Responses at 11. The biased and subjective investigation, sanctioned by Chief Pavlik, and completed in regards to this issue specifically**

3

excluded any exculpatory information in order to ensure a guilty finding against the **Plaintiff.** *See Id.* **This is a demonstration of continued harassment and retaliation that was directed towards Plaintiff by Chief Pavlik.**

5. On April 6, 2018, Plaintiff received a written warning for failing to properly staff her shift on Easter Monday of 2018. ECF No. 12-6.

   **RESPONSE: Disputed. Plaintiff approved leave requests for the Easter Monday holiday on February 4 and February 6, 2018, prior to being provided the schedule of MTPD supporting events.**

6. On July 26, 2018, Plaintiff filed an internal complaint of discrimination with WMATA's Office of Fair Practices ("FAIR") alleging that her prior discipline was racially discriminatory. ECF No. 12-7.

   **RESPONSE:** Admitted

7. On November 1, 2018, Plaintiff received a letter of reprimand for her violation of MTPD General Order 231 because she failed to contact a citizen who complained about a traffic stop and start a preliminary investigation into said traffic stop. ECF No. 12-8.

   **RESPONSE: Disputed. Plaintiff became aware of such issue on July 30, 2018 and immediately following that disclosure she contacted the appropriate point of contact within MTPD to begin the investigative process. She spoke with the complainant and immediately conducted a preliminary investigation.** *See* **Exhibit 5.**

8. On January 4, 2019, Plaintiff received a letter of reprimand for violating MTPD General Order 255 because she granted six (6) MTPD police officers leave above the two (2) officer allowance given by her commanding officer. ECF No. 12-9.

4

**RESPONSE: Disputed. Plaintiff approved six (6) members for leave over a three (3) month period utilizing the newly established statistical approach. By doing so, there were twenty-two (22) officers working each shift, which surpassed the minimum level of eighteen (18) officers as determined by Deputy Chief Boehm.** *See* **Exhibit 5; Exhibit 7.**

9.  On January 10, 2019, FAIR issued the results of its internal investigation into Plaintiff's 2018 above-mentioned internal complaint finding that MTPD had legitimate, non-discriminatory reasons for each action complained of by Plaintiff. ECF No. 12-7.

    **RESPONSE: Disputed. While FAIR did issue a "non-discriminatory" finding, it does not equate to exonerating Defendant from any wrongdoing and/or engagement in misconduct. In fact, FAIR failed to fully evaluate Plaintiff's numerous complaints against Chief Pavlik, Deputy Chief Boehm, and Defendant organization, as well Plaintiff's thoroughly detailed rebuttals to proposed discipline issued by both Pavlik and Boehm.** *See* **Exhibit 5.**

10. On August 28, 2020, Plaintiff files a second internal complaint of discrimination with WMATA's Office of Fair Practices alleging that she was subject to retaliation because she filed the 2018 internal complaint and that she was subject to race/color/gender discrimination in violation of WMATA policy. ECF No. 12-10.

    **RESPONSE:** Admitted

11. On December 30, 2020, Plaintiff was issued a written dereliction in violation of General Order 215 when she was cited for ordering two junior officers to sign a Talent Release form without telling them it was consensual. ECF No. 12-11

**RESPONSE: Disputed. Plaintiff, aware that uniformed officers are agents of Defendant organization, merely instructed the junior officers to place a star on their release forms to indicate whether they wished to appear in the New Employee Orientation video.** *See* **Exhibit 5; Exhibit 8.**

12. On January 21, 2021, Plaintiff was demoted to Sergeant in lieu of termination for four (4) violations of MTPD General Order 216. ECF No. 12-12.

    **RESPONSE: Disputed. Plaintiff was not demoted because she had actually committed four (4) violations of MTPD General Order 216, but rather she was demoted in an act of retaliation for her continued oppositional response to Chief Pavlik and Deputy Chief Boehm's continued discriminatory behavior and employment actions.** *See* **Exhibit 5***; see* **Exhibit 9.**

13. On February 19, 2021, because of an investigation into alleged missing evidence, initiated on January 29, 2021, Plaintiff receives no discipline, and Plaintiff receives an "Exonerated" findings classification. ECF No. 12-13.

    **RESPONSE: Disputed. A preliminary investigation was not completed as required by policy.  In not doing so, and in the face of exculpatory evidence, the Defendant still sought to subject Plaintiff to discipline in an attempt to continue its harassment and discrimination towards her.  The "exoneration" was not, in fact, a proper finding as the investigation was improper at its onset.** *See* **Exhibit 5.**

14. On February 26, 2021, (seven days later) the findings classification for the above-mentioned investigation is changed to "Unfounded." ECF No. 12-14.

**RESPONSE: Admitted to the extent that this was the actual finding of the investigation. However, Plaintiff maintains her dispute that the investigation itself was illegitimate and discriminatory.** *See* **Exhibit 5.**

15. On July 17, 2021, Plaintiff filed Charge of Discrimination (#570-2021-01998) with the D.C. Office of Human Rights and the EEOC alleging retaliation and a hostile work environment. ECF No. 12-15.

   **RESPONSE:** Admitted

16. On March 27, 2023, Plaintiff earns a promotion back to Lieutenant and is reassigned to Patrol Operations. Holmes Dep. 7:6-22 & 8:1-6. ECF No. 12-2.

   **RESPONSE: Admitted to the extent that Plaintiff was formally reinstated as a Lieutenant but disputed to the extent that Plaintiff essentially was placed in a position where she had to earn her rank despite her having maintained that position for several years.** *See* **Exhibit 5.**

## IV.    ARGUMENT

### A.  Legal Standard

#### 1.  Motions for Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists, and the moving party has proven its burden of demonstrating the absence of any genuine issue of material facts. *Adickes v. Kress & Co*., 398 U.S. 144, 157 (1970). As the Supreme Court has explained, summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must view the facts, and the inferences to be drawn therefrom, in the light most favorable to the non-moving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, "[s]ummary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Anderson*, 477 U.S. 242, 248 (1986). In determining whether genuine and material factual disputes exist, the Court reviews the memorandums and the exhibits attached thereto, construing all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-movant. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).*

### 2. Standard for Title VII Discrimination

To allege a *prima facie* case of Title VII discrimination, the two essential elements of a discrimination claim on any of these bases are: (1) that the Plaintiff suffered an adverse employment action and it occurred (2) because of the plaintiff's race, color, religion, sex, and/or national origin. The standard is the same for any of these prohibited bases. *See Brady v. Office of Sergeant of Arms,* 520 F.3d 490, 493 (D.C. Cir. 2008).

To state a *prima facie* case of retaliation under Title VII, a plaintiff must establish: (1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exists between the protected activity and the adverse employment action. *See Mitchell v. Baldridge,* 759 F.2d 80, 86 (D.C. Cir. 1985). Close temporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a *prima facie* case of causation. *Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268, 271 (2001).

When a plaintiff lacks direct evidence of retaliation, the burden shifting framework described in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973), provides that the plaintiff must first make out a *prima facie* case of discrimination and then the burden shifts to the employer to articulate a legitimate explanation for the action. *Holcomb v. Powell,* 433 F.3d 889, 901 (D.C. Cir. 2006). After the employer has offered a reason for its action, the only question for the Court is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *See Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir 2008).

Here, genuine issue of material facts exists, and summary judgment is improper. *See* Exhibit 1, Plaintiff's Response to Defendant's Statement of Material Facts. In its Motion, Defendant has not offered legitimate non-discriminatory reasons for its actions[2]. Additionally, there is a dispute regarding whether the actions perpetrated by the Defendant are related and connected discrete acts that establish a pattern and practice of hostile work environment. ECF No. 14 at 8. While the Defendant argues that Plaintiff's allegations are "little more than throwing pieces of spaghetti on the wall and seeing what sticks," Plaintiff avows she was discriminated against based on her race, sex, and prior protected activity. *See Id*. at 10. Further, many of these actions were perpetrated and/or sanctioned by the same manager, specifically Captain Boehm and Chief Pavlik. Based on the information provided in the existing record, a jury could infer discrimination from the combination of the Plaintiff's: (1) *prima facie* case of discrimination and retaliation, (2) the evidence the Plaintiff has presented to counter any proffered explanation for

---

[2] To the extent that Defendant's legitimate non-discriminatory reasons are set forth in the Defendant's Statement of Material Facts Not in Dispute, they have been offered as pretext and not the actual reasons for its actions. ECF No. 14-1. Plaintiff disputes the reasons offered for the challenged actions. *See* Exhibit 1.

the Defendant's actions; and (3) additional evidence regarding Defendant's discrimination of Plaintiff since 2013. *See Nurriddin v. Bolden*, 818 F.3d 751, 758–59 (D.C. Cir. 2016). Given the material facts in dispute and credibility issues, summary judgment in this matter is improper.

### 3. Standard for Hostile Work Environment

Like hostile work environment claims based on race and gender, hostile work environment claims based on retaliation are "legally cognizable." *See Franklin v. Potter*, 600 F. Supp. 2d 38, 52 n. 19 (D.D.C. 2009); *see also Hussain v Principi*, 344 F. Supp. 2d 86, 105 *aff'd sub nom. Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). "Hostile environment claims are different in kind from discrete acts" because "their very nature involves repeated conduct. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). These kinds of claims are "compromised of a series of separate acts that collectively constitute on unlawful employment practice." *Id*. at 116. As such, "the entire period of the hostile environment may be considered by a court" if "an act contributing to the claim occurs within the filing period." *Id*. at 117-118.

Moreover, to establish a claim of hostile work environment/harassment, Plaintiff must show that:

> (1) [she] is a member of a protected class; (2) [she] was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it.

*See Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012). Determining whether a hostile work environment existed depends on "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *See Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). A plaintiff must show

that the actions were "sufficiently severe or pervasive."  However, "severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other." *See Brooks v. Grundmann,* 748 F.3d 1273, 1276 (D.C. Cir. 2014)

**B. Plaintiff's Allegations Satisfy the Legal Requirement of a Hostile Work Environment Under Title VII**

As mentioned *supra*, hostile work environment claims are different and not confined to the rigid time limitations of discrete discriminatory acts.  "Both incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' only if they are adequately linked to a coherent hostile environment claim – if, for example, they 'involve the same type of employment actions, occur relatively frequently, and [are] perpetrated by the same managers.'" *See Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)(cleaned up)(quoting *Morgan*, 536 U.S. at 120-21).

In this instant matter, Plaintiff raised incidents of racial and gender discrimination and retaliation by or ratified by her supervisor, Captain Boehm and Chief Pavlik.  The actions Plaintiff alleged do not merely add up to "trivial harms," but resulted in adverse actions or jeopardized her career growth, professional reputation, and ability to perform her daily duties or at the very least question her ability to perform. ECF No. 1, ¶¶ 20-21, 23-24, 31-34.  Plaintiff's allegations consisted of, but not limited to: involuntary shift reassignments that impacted her mental and physical health; a demotion and loss of pay as a result of unfair disciplinary practices; enabled harassment by her coworkers, which includes being subjected to frivolous investigations after false complaints were made against her; administrative leave; withheld compensation; and investigations. *See Id*. Captain Boehm's actions were severe and pervasive – they occurred for over eight (8) years and, despite Plaintiff's complaints and reports, continued without relief.

### C. Plaintiff's Allegations Satisfy the Legal Requirement of Retaliation Claim Under Title VII

#### 1. Plaintiff engaged in protected activity

Plaintiff has established retaliation under Title VII. Although, when an employer has asserted a legitimate non-retaliatory reason for its actions, whether or not Plaintiff has made out a *prima facie* case is irrelevant. *See Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)("the *prima facie* case is largely unnecessary sideshow.). However, in its Motion to Dismiss, Defendant did not address any legitimate non-retaliatory reason for its actions. Instead, the Defendant argues that the actions identified by Plaintiff were not materially adverse. ECF 13 at 8.

The record of evidence shows, and the Defendant concedes, that Plaintiff did engage in prior protected activity. ECF 1, ¶¶ 17, 19, 21, 23, 24, 27; ECF 14 at 7; *see* Exhibit 4 at 79:9-21; 82:14-16. In 2012, 2015, 2020, 2021, and 2022 Plaintiff filed EEOC charges and complaints. Exhibit 2, Plaintiff's Discovery Responses at 9-11; *see* Exhibit 4 at 81:12-17, 82:14-16, 83:12-21. Therefore, Plaintiff has established the first element.

#### 2. Plaintiff was Subjected to Adverse Employment Action

For Title VII retaliation claims, an adverse employment action is an action that is "harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 57 (2006). In *Chambers v. District of Columbia*, this Court explained the difference between adverse actions in discrimination and retaliation claims:

> unlike the antidiscrimination provision, the antiretaliation provision is not expressly limited to actions affecting the terms, conditions, or privileges of employment…the antiretaliation provision prohibits even retaliatory actions that do not affect the terms, conditions, or privileges of employment, for example, an employer making a false criminal charge against an employee who had complained of discrimination,

12

or a law enforcement agency refusing to investigate death threats made against an employee who had complained of discrimination. (citations omitted).

35 F.4th 870, 876-77 (D.C. Cir. 2022). "The antidiscrimination provision 'seeks to prevent injury to individuals based on who they are,' while '[t]he antiretaliation provision seeks to prevent harm to individuals based on what they do.'" *See id* (quoting *Burlington*, 548 U.S. at 63).

The retaliatory actions outlined in the Complaint were adverse and imposed or ratified by Captain Boehm and Chief Pavlik to prevent Plaintiff from continuing to participate in protected activity. Additionally, they affected the terms, conditions, or privileges of employment. Following Plaintiff's internal complaint of discrimination against Captain Boehm, Plaintiff was involuntarily reassigned to the day shift, which increased contact with Captain Boehm whom she had just filed a complaint against as her harasser; improperly demoted to sergeant; the subject of a frivolous investigation; and improperly had her compensation withheld. Further, soon after filing this complaint, Chief Pavlik reassigned Captain Boehm as Plaintiff's direct supervisor, despite the fact that another individual, Captain Hamlin, had already been assigned to that position. *See* Exhibit 2, Plaintiff's Discovery Responses at 6. With this action, it is clear that Chief Pavlik acted in retaliation towards Plaintiff because, "[she] complained about Boehm and his continuous investigations and [she also] blamed the Chief for his failures to take any steps to provide relie[f] from a targeted hostile work environment." *Id*.

What can be further demonstrated in Plaintiff's case is that this incident was not isolated and both Captain Boehm and Chief Pavlik took every opportunity available to them to retaliate and harass Plaintiff because she is "known to be an EEO Complainer." *See* Exhibit 3 at 85:11-12. After filing her ethical complaint against a coworker in January 2021, Plaintiff was then demoted from Lieutenant to Sergeant. *See Id*. at 86:10-13; *see* Exhibit 6. Likewise, each time Plaintiff filed a complaint alleging discriminatory employment practices, Chief Pavlik would lodge a baseless

accusation against her in order to initiate an investigation. After being demoted, Plaintiff was the subject of a baseless accusation regarding missing evidence. *See* Exhibit 4 at 101:18-20. Despite the fact that Plaintiff was *not* involved in *any* aspect of the alleged missing evidence, and in fact was not involved in the collection or storage of this evidence, the complaint was lodged against her specifically. *See Id*. at 103:9-21. When questioned about whether it was appropriate or procedure to lodge a complaint against an uninvolved individual, the Defendant noted that this determination was left to the discretion of the investigating official. See *Id*. at 104:4-9. Further, there were ample opportunities for the Defendant to reevaluate the allegations and choose to not investigate given the clear and convincing evidence that Plaintiff was not involved in the missing evidence – however, the Defendant still chose to move forward with the frivolous investigation in a continued act of retaliation against Plaintiff, even though the evidence was eventually found. *See Id*. at 106:11-16; 108:10-14.

Moreover, in an attempt to further harass and terrorize Plaintiff, Chief Pavlik would often assign these baseless and vengeful investigations specifically to Captain Boehm, Plaintiff's documented harasser, to oversee and complete. *See* Exhibit 2, Plaintiff's Discovery Responses at 5. In a span of sixteen (16) months, Captain Boehm directly or indirectly initiated seven (7) investigations against Plaintiff. *See Id*. These actions, coupled with the nearly three (3) years of retaliation incidents from Chief Pavlik, are the kinds of actions that "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S at 57. Captain Boehm and Chief Pavlik took adverse employment actions against Plaintiff for engaging in protected activity.

### 3. There is a Causal Connection Between Plaintiff's Protected Activity and the Adverse Employment Action

14

Plaintiff engaged in protected activity. Captain Boehm and Chief Pavlik had knowledge of Plaintiff's extensive protected activity beginning in 2012, specifically allegations of discrimination and retaliation by both Boehm and Pavlik. *See* Exhibit 3 at 85:11-12. Moreover, Plaintiff had been vocal that the January 2021 demotion from Lieutenant to Sergeant was retaliatory, as well as the subsequent adverse employment actions implemented by Boehm and Pavlik as a result of that vocalization. *See Id*. at 69:16-22; 70:1; Exhibit 6; Exhibit 9. When no action was taken in regards to these complaints, Plaintiff then filed a complaint against the same coworker who initiated an investigation against her. ECF No. 1, ¶ 27; *see* Exhibit 3 at 85:11-22; 86:1-8; *see* Exhibit 4 at 108:15-19.

The causal connection between a plaintiff's protected activity and the adverse employment action "may be established if the plaintiff alleges 'that the employer had knowledge of the protected activity and that the adverse action occurred soon thereafter." *See Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) (quoting *Marshall v. Potter*, 634 F. Supp. 2d 66, 73 (D.D.C. 2009)). "When relying on temporal proximity alone to demonstrate causation, there is no bright-line rule, although three months is perceived approaching the outer limit." *Greer*, 113 F. Supp. 3d at 311. Within weeks after Plaintiff filed an internal complaint alleging discrimination and retaliation, Chief Boehm initiated an investigation into her alleged misconduct. Exhibit 3 at 129:3-11; *see* ECF No. 1, ¶ 24; *see* Exhibit 2, Plaintiff's Discovery Responses at 5. In the same month that Plaintiff lodged a complaint against her coworker, her compensation was impermissibly docked despite timely providing all requested information. ECF No. 1, ¶ 31; *see* Exhibit 3 at 119:1-12. Plaintiff can satisfy the causation element of retaliation.

15

**4. The Defendant has offered no Legitimate Non-Retaliatory Explanation for the Action**

In its Motion, Defendant has offered no legitimate non-retaliatory explanation for falsely accusing Plaintiff of being involved in missing evidence as well as demoting her from Lieutenant to Sergeant. Instead, Defendant summarily concluded that these actions are not materially adverse without providing supportive evidence of such assertions. ECF No. 14 at 7-8. To the contrary, the demotion, low performance evaluations, lack of investigations into Plaintiff's own founded complaints, and withholding her compensation are not "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. Only Plaintiff was subjected to these actions due to Chief Pavlik's and Captain Boehm's retaliation directed at Plaintiff due to her protected activity. Plaintiff was impermissibly and rapidly demoted, without cause, shortly after filing a complaint which then impacted her expected earnings and career trajectory as a result of their retaliation. *See* Exhibit 3 at 117:20-22; 118:1-22. Furthermore, Defendant, by and through Chief Pavlik and Captain Boehm, refused to investigate Plaintiff's legitimate complaints of discrimination and hostile work environment, while referring to her as a "problem" because of her history of protected activity, all the while both Pavlik and Boehm launched baseless, unfounded, and wasteful investigations against her for the purposes of intimidation and retaliation. ECF No. 1, ¶ 19; *see* Exhibit 4 at 108:15-21, 109:1-21; *see* Exhibit 3 at 122:14-22. Plaintiff then had her full compensation withheld for several weeks in June 2021 despite having worked the hours for an alleged "overpayment" that was never outlined nor explained to her. Exhibit 3 at 120:13-22; 121:1-11. As such, it is incredibly clear that through Plaintiff's actions of reporting discrimination, harassment, and unfair labor practices, Plaintiff became targeted by both Chief Pavlik and Captain Boehm for her protected disclosures which resulted in numerous implementations of adverse personnel actions being lodged against her.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court deny the Defendant's Motion for Summary Judgment on the claims presented in the plaintiff's Complaint. There are substantial issues of fact and credibility, and other factual matters disputed requiring findings by the trier of fact.  Therefore, this case should be set for a hearing on the Court's docket.

Respectfully submitted,

/s/ Donna Williams Rucker

Donna Williams Rucker
(D.C. Bar 446713)
Tully Rinckey, PLLC
2001 L Street NW, Suite 902
Washington, DC 20036
Tel: (202) 787-1900
Fax: (202) 640-2059
DRucker@fedattorney.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 4th day of December 2023, I served the above Plaintiff's Opposition to Defendant's Motion for Summary Judgment *via* CM/ECF on the following:

Michael K. Guss
Senior Counsel
WMATA-COUN
600 Fifth Street NW
Washington, DC 20001

/s/ Donna Williams Rucker
Donna Williams Rucker

18