

# Transcript of Tomika Holmes

**Date:** July 6, 2023
**Case:** Holmes -v- Washington Metropolitan Area Transit Authority

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

**WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY**

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLUMBIA
 3      - - - - - - - - - - - - x
 4        TOMIKA HOLMES,            :
 5                Plaintiff,        :
 6            v.                    :    Case No.
 7        WASHINGTON                :    1:12-cv-01478-JEB
 8        METROPOLITAN AREA         :
 9        TRANSIT AUTHORITY,        :
10                Defendant.        :
11      - - - - - - - - - - - - x
12
13                 Deposition of TOMIKA HOLMES
14                     Conducted Virtually
15                    Thursday, July 6, 2023
16                          10:51 a.m.
17
18
19      Job No.:  498977
20      Pages:  1 - 170
21      Reported By:  Carla L. Andrews, RPR
22
```

1       Deposition of TOMIKA HOLMES, conducted
2   virtually.
3
4
5
6       Pursuant to Notice, before Carla L. Andrews,
7   Notary Public in and for the District of Columbia.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Transcript of Tomika Holmes
Conducted on July 6, 2023                    3

```
 1              A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFF:
 3        DONNA WILLIAMS RUCKER, ESQUIRE
 4        TULLY RINCKEY, PLLC
 5        2001 L Street, N.W.
 6        Suite 902
 7        Washington, D.C. 20036
 8        DRucker@fedattorney.com
 9
10   ON BEHALF OF THE DEFENDANT:
11        MICHAEL K. GUSS, ESQUIRE
12        WASHINGTON METROPOLITAN AREA TRANSIT
13        AUTHORITY
14        300 7th Street, S.W.
15        Washington, D.C. 20024
16
17
18
19
20
21
22
```

1  connection lost for a moment, and it was circling.
2  So we are back.
3           MR. GUSS:  Yeah, I didn't ask any
4  question when you guys were lost when I saw that you
5  were lost.
6           MS. RUCKER:  I have a question.  If you
7  are done with this line of questioning, I was just
8  wondering if this is a quick chance to run for
9  coffee.
10          MR. GUSS:  Yeah.  Let's do 10 minutes.
11          MS. RUCKER:  Okay.  It is 12:03 now.  We
12 will be back at 12:13.  Is that right?
13          MR. GUSS:  Yeah, 12:13.
14          (A recess was held.)
15          BY MR. GUSS:
16    Q.    So I want to -- Lieutenant Holmes, I want
17 to direct you to around your demotion in January 21,
18 2021.  First, to get a general sense, is that also
19 one of the, I guess -- I am trying to find a good
20 word.  I guess one of the allegations in your
21 complaint is that your demotion was discriminatory
22 and/or retaliatory.  Is that fair to say?

1    A.   Yes, sir.

2    Q.   Going back to your demotion, do you know

3 why you were demoted?

4    A.   I know what the write-up said.  Well, a

5 general understanding of what the write-up said.

6    Q.   Okay.  And when you said the write-up,

7 are you referring to the investigation number

8 2020-098, which involved an accusation between --

9 involving -- I guess involving Nopadon McKee -- I

10 believe he was acting captain at the time -- and

11 yourself involving a safety meeting that was held on

12 September 15, 2020.  I know that's a lot, but --

13   A.   No, that's not the document I was

14 referring to.

15   Q.   Okay.  What document were you referring

16 to?

17   A.   Referring to the memorandum from the

18 chief that outlines your demotion.

19   Q.   Okay.  Okay.  If you can recall that

20 memorandum, do you know the bases for your demotion

21 from lieutenant to sergeant in 2021?

22   A.   Summarizing, basically that I was

1          MR. GUSS:  I know.
2          MS. RUCKER:  I wrote it down if you want
3  me to help.
4          MR. GUSS:  You know what?  I am going to
5  frustrate everyone and scratch the question.  And
6  I'm going to be a little more narrower with it.
7          BY MR. GUSS:
8     Q.   So Lieutenant Holmes, what is your basis
9  for believing that your demotion was the result of
10 race and/or color discrimination?
11    A.   And, again, it is cumulative.  I am known
12 to be an EEO complainer.  I fight for justice
13 against biases that are culturally known in MTPD
14 from my experience.  I am a black woman who has
15 complained against the chief of police and, in my
16 opinion, all those that follow along his leadership
17 of that's how you get on here.  You have got to be
18 friends with me and what I say and how things go.
19 And I just don't sit well with that.  And so I
20 believe the demotion -- the investigation.  I made
21 an ethical complaint against what could be a
22 Caucasian -- he is Caucasian male who is in the

1  group of friends of Pavlik -- and against other
2  white males who are in this group of friends of
3  Pavlik.  And that was a no-no.  How dare I, you
4  black girl, complain about these white men in this
5  police department.  How dare you make an ethical
6  complaint against a white male that's -- or other
7  white males that I have put on the path of
8  greatness.  How dare you.
9           So I made an ethical complaint against
10 one of the chosen.  And in the midst of that, that
11 was turned around to be a complaint against me, and
12 then I get demoted.  I think it was retaliatory
13 because like I'm going to show you.  You have been
14 complaining about 15 years, 16 years, little girl,
15 little black girl.  How dare you.  Yes, you test
16 higher than all these white men.  I don't care.
17 Yes, you come in here, and you work harder than all
18 of the white men.  I don't care.  Yes, you are liked
19 by more people than any of these white males.  I
20 don't care.  Yes, you are very meticulous and want
21 to do things the right way.  I don't care.  I'm
22 going to put you in your place, which is why I

```
 1        Q.    And what's your basis for that?
 2        A.    I believe that it all stemmed from,
 3   again, my complaining or my complaints about WMATA's
 4   or not WMATA -- it is not WMATA, but MTPD,
 5   specifically Pavlik, Nader's discriminatory, racist,
 6   sexist practices.  And I believe that this -- okay.
 7   We ain't get you -- we couldn't get you terminated.
 8   We did get you demoted, little black girl.  And now
 9   we are going to mess with your money.  That pay was
10   taken because specifically this white male gave
11   incorrect information and was so zealous about this
12   demotion that they messed up the time.  They messed
13   up the time.  And it all resulted in my pay being
14   taken from me inaccurately.  And it was never
15   corrected to this day.
16        Q.    So who is the white male that you speak
17   of?
18        A.    Now, it's Nader -- George Nader.  He was
19   deputy chief at the time; now he is assistant chief.
20        Q.    Did anyone explain to you that the pay
21   issue was a result of your demotion?  Did anyone
22   ever explain to that you were being paid for the
```

1  lieutenant level when you were demoted to sergeant
2  and that was why there was a pay issue?  Did anyone
3  ever explain that to you?
4           MS. RUCKER:  Objection.  You can answer.
5  Misstates the evidence of record.  But you can
6  answer.
7           THE WITNESS:  Did someone state that that
8  was the cause?  Yes, someone stated it.  But the
9  proof was not there.  The records were inaccurate.
10          BY MR. GUSS:
11     Q.   Okay.  Who was that someone?
12     A.   Well, I have had several conversations.
13 So let's say that I had several conversations with
14 several different people to rectify the issue.  Me
15 and Ms. Merra Demissie.  I don't know what her title
16 is now.  But at the time she was like the person in
17 charge of our T&A.  She and I had a conversation.
18 And she explained that it was incorrect initially.
19 And she explained yes, you are correct.  It is
20 incorrect.  We will fix it.
21          Then I want to say maybe at the time my
22 supervisor maybe Sherry Willis and I had a

```
 1   conversation.  I am not sure.  Maybe me and Raymond
 2   Boyd had a conversation because he was also
 3   supervisor.  So I had plenty of conversations
 4   because I asked about it numerous times to different
 5   people trying to follow my chain of command.  And
 6   someone stated at some point in reference to the
 7   demotion.  But I had all the records to show that's
 8   incorrect because the dates were put in wrong.  The
 9   overzealousness of trying to have my demotion done
10   resulted in the dates being put wrong.  So I was
11   underpaid.  And then the money was taken.  You know,
12   then they docked my check, if that explains it.
13        Q.   How much money was lost?
14        A.   I don't know.  I cannot recall at this
15   point.  It is in the documents because I don't
16   want --
17        Q.   What documents?  You said in the
18   documents.  What documents --
19             MS. RUCKER:  You guys are talking over
20   each other.  You can to wait one second.  So his
21   question and then your answer.
22             THE WITNESS:  In the complaints that I
```

1  made.
2           BY MR. GUSS:
3      Q.   Were those complaints in email form or --
4      A.   Both.  Well, you say "or" -- I am sorry.
5  I didn't let you finish what your "or" is.
6      Q.   Was it email form or was it -- or was it
7  other documents?
8      A.   It was an email form.  And then I
9  actually handed the documents to Merra Demissie.
10          MR. GUSS:  Just off record, Donna.
11          (A discussion was held off record.)
12          BY MR. GUSS:
13     Q.   So going back, Lieutenant Holmes, was it
14 -- about how much was the underpayment?
15     A.   I can't remember.  Just one cent is too
16 many cents.  So I can't remember the exact amount.
17 I apologize.  But it was not correct.
18     Q.   Okay.  But that issue was only between
19 June 8, 2022.  The checks you started getting after
20 June 22, 2022, were they correct?  Were they correct
21 checks?
22     A.   The issue was -- that's not a yes or no

Transcript of Tomika Holmes
Conducted on July 6, 2023
122

```
 1   Chief Nader to -- the payroll personnel at that
 2   point was Merra Demissie.
 3        Q.   Now, there's also allegations of a
 4   hostile work environment.  Is that -- just to be
 5   clear, a hostile work environment can be made based
 6   on race and/or gender or both.  What is your
 7   allegations of a hostile work environment?  Is it
 8   based on race, gender, or both?
 9             MS. RUCKER:  I just want to object,
10   Michael, because it's giving her, first of all,
11   legal advice.  And it seems to be limited in terms
12   of what you are offering her the option for
13   answering this question.  You can answer.
14             THE WITNESS:  And I am -- it's not funny.
15   It's sad and sickening the fact that a vocal woman
16   of color, myself, is constantly subjected to -- when
17   I say a hostile work environment through constant
18   investigations, constant nitpicking, constant
19   gaslighting.  Just inappropriate, unprofessional
20   conduct by white males in our department or at the
21   hands of white males in our department.  So the
22   hostile work environment, it could be sexist.  It
```

Transcript of Tomika Holmes
Conducted on July 6, 2023                                                              129

```
 1   colleague for filing this false information.  No
 2   investigation was done at all.
 3              You are talking about the demotion.  To
 4   me, that was reprisal because I complained every
 5   step of the way when something was done wrong to me
 6   because you were targeting me as a black woman and I
 7   spoke out about it.  So you continued to have
 8   investigation after investigation after
 9   investigation.  And then you didn't investigate the
10   white males for any of the things that you
11   investigated me about, you know, that I know of.
12              So that's my reason to believe that it's
13   based upon my race and my sex and the fact that I'm
14   an outspoken black woman who brings to your
15   attention your biased-based practices and the
16   culture that needs to be changed within MTPD.
17        Q.   I want to get back to the investigation
18   where you were found -- that was found to be
19   unfounded -- initially exonerated and found to be
20   unfounded.
21        A.   Yes, sir.
22        Q.   So it's my understanding that you wanted
```